UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA VAN RENTALS, INC. and
MEDICAL TRAVEL, INC.,

    Plaintiffs,

v.   Case No: 8:13-cv-1732-T-36EAJ

AUTO MOBILITY SALES, INC.,

    Defendant.
_____/

# **ORDER**

This cause comes before the Court upon the Defendant Auto Mobility Sales, Inc.'s ("Auto Mobility") Motion for Summary Judgment (Doc. 32). Plaintiffs Florida Van Rentals, Inc. d/b/a Discount Mobility USA ("FLVR") and Medical Travel, Inc. ("MT") responded in opposition to the motion (Doc. 43). The Court held oral argument on the motion on December 22, 2014. Doc. 72. The Court, having considered the parties' submissions, including depositions and declarations, and the oral argument, and being fully advised in the premises, will now GRANT Defendant's Motion for Summary Judgment.

**I.     STATEMENT OF FACTS[1]**

This trademark dispute arises from Auto Mobility's use of three unregistered marks owned by FLVR and MT. FLVR is a business that specializes in the rental of various types of vans, including handicap accessible vans and non-emergency wheelchair accessible vans. Doc. 43-1 ("Goldberg Decl.") ¶ 5. In August 2010, Discount Mobility USA, Inc. merged into FLVR, giving FLVR the rights to the trademarks "Discount Mobility" and "Discount Mobility USA." *Id.* ¶ 4.

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, statement of undisputed facts, affidavits, and deposition testimony.

MT is a medical travel agency that caters to patients with special medical needs. Doc. 1 ("Compl.") ¶ 15.  Among other things, it arranges cruises and land vacations for dialysis patients, patients with respiratory problems, and wheelchair-bound travelers.  Compl. ¶ 16.  It claims rights to the trademark "Medical Travel."

FLVR and MT allege that Auto Mobility infringed their trademarks by its use of the trademarked phrases in its online advertisements.  Specifically, Auto Mobility came to use these phrases as follows:  From November 1, 2012 to August 6, 2013, Auto Mobility ran an advertising campaign that used the keywords "discount" and "mobility" together to trigger Google AdWords advertisements.  Doc. 36 ¶ 31.  During that same time period, Auto Mobility's advertising campaign also used the keywords "medical" and "travel" together to trigger Google AdWords advertisements.  *Id.* ¶ 32.  Auto Mobility's advertising campaign utilized the "dynamic keyword insertion" feature of Google AdWords.  *Id.* ¶ 33.  As a consequence, when Internet users searched for a combination of these terms on Google, these phrases appeared in the title of Auto Mobility's online advertisements.  *Id.* ¶ 30; *see also* Doc. 35-1.

On July 3, 2013, Plaintiffs filed a six count complaint against Defendant for trademark infringement and unfair competition under the Lanham Act, 15 USC §§ 1051, *et. seq.*, trademark infringement under Florida law, and deceptive and unfair trade practices under Florida statutory and common law. Auto Mobility now moves for summary judgment, arguing that Plaintiffs do not have protectable interests in their trademarks.  Auto Mobility argues also that Plaintiffs have failed to demonstrate a likelihood of confusion or that they have suffered any damages from Auto Mobility's use of their trademarks.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## III. DISCUSSION

To prevail on a claim of trademark infringement in violation of 15 U.S.C. 1125(a), a claimant must show "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers

were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). The elements of common law and statutory trademark infringement are the same. *See Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1025-26 (11th Cir. 1989). Likewise, the legal standard for unfair competition is the same as that for trademark infringement under both the Lanham Act and common law. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008); *Anderson v. Upper Keys Business Grp., Inc.*, 61 So. 3d 1162, 1167 (Fla. 3d DCA 2011).

A plaintiff need not register its mark to prove that it has rights to a valid trademark. *See Tana v. Datanna's*, 611 F.3d 767, 773 (11th Cir, 2010). Rather, a plaintiff need only show that its mark is "capable of distinguishing the owner's goods from those of others, i.e., that [it is] sufficiently 'distinctive.'" *Id.* The Eleventh Circuit and the Florida Supreme Court recognize four categories of distinctiveness: (1) generic marks, which "suggest the basic nature of the product or service"; (2) descriptive marks, which "identify the characteristic or quality of a product or service"; (3) suggestive marks, which "suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive"; and (4) arbitrary or fanciful marks, which "bear no relationship to the product or service." *Id.*; *see also Great Southern Bank v. First Southern Bank*, 625 So. 2d 463, 467-69 (Fla. 1993) ("We approve these definitions and adopt them for use with chapter 495.").

Suggestive and arbitrary or fanciful marks are "inherently distinctive," and are thus generally entitled to trademark protection. *See Tana*, 611 F.3d at 774. On the other hand, generic marks are generally incapable of receiving trademark protection. *See id.* Finally, "[d]escriptive marks, though not inherently distinctive, may become sufficiently distinctive to enjoy trademark protection by acquiring 'secondary meaning.'" *Id.*

4

The demarcation between each of these categories "is more blurred than it is definite." *Investacorp, Inc. v. Arabian Investment Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991). Nevertheless, the Eleventh Circuit in *Investacorp* provided helpful illustrative examples of trademarks for a hypothetical milk delivery service that would fall within each of these categories:

> The term "Milk Delivery" is an example of a generic service mark for a hypothetical milk delivery service. . . . An example of a descriptive service mark might be "BarnMilk." . . . The personal name component of a service mark such as "Barney's" to denote a milk delivery service is also considered not inherently distinctive and hence merely descriptive. . . . Marks which are descriptive of geographic location of the source of the service are treated in the same manner as personal name marks. . . . "Barn-Barn" is an example of a suggestive term. . . . "Barnbarnfish" is an example of an arbitrary or fanciful service mark.

*Id.* at 1522-23.

### A. "Discount Mobility" and "Discount Mobility USA"

Auto Mobility argues that "Discount Mobility" and "Discount Mobility USA" are generic marks, or that, in the alternative, they are descriptive with no secondary meaning. FLVR disagrees, arguing that these marks are neither generic nor descriptive. Although not clear from the briefing, FLVR suggested at oral argument that it believes these marks are suggestive. *See* Hearing Tr. at 12. FLVR further argues that, even if these marks are descriptive, they have acquired secondary meaning. After careful consideration, the Court finds that there is no genuine dispute of material fact that these marks are descriptive and lack secondary meaning, and thus are not entitled to any trademark protection.

#### 1. "Discount Mobility" and "Discount Mobility USA" are descriptive marks

The undisputed evidence reveals that "Discount Mobility" and "Discount Mobility USA" are descriptive marks. *First*, as FLVR states, it is in the business of providing transportation

5

services, including those for handicapped individuals. In this context, the term "mobility" merely identifies a characteristic of the products or services provided by FLVR. Indeed, in the website capture submitted by FLVR to the United States Patent and Trademark Office ("USPTO"), FLVR itself uses the term "mobility" to describe the services and products that it provides—for example, by listing "Florida Mobility Equipment Rentals" and "Mobility Scooters" as categories of products that it offers. Doc. 37-16 at 10. No imagination of a potential consumer of transportation services is required to associate the word "mobility" with the products offered by FLVR. This term therefore cannot be suggestive, but rather must be descriptive. *Accord Investacorp*, 931 F.2d at 1524 (finding a mark descriptive "[b]ecause the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination").

*Second*, the USPTO found that these terms are descriptive. Although not binding on this Court, the USPTO's determination "is an important factor to consider in light of [its] specialized expertise." *GamerModz, LLC v. Golubev*, Case No. 10-cv-1466, 2011 WL 4755026, at *11 (M.D. Fla. Aug. 3, 2011); *see also Murphy Door Bed Co., Inc. v Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989). Here, the USPTO has set forth in detail its reasons for finding the mark descriptive. *See* Doc. 37-16 at 12-13. The Court will accordingly "bestow proper respect to [its] determinations." *Investacorp.*, 931 F.2d at 1524.

*Third*, another indicator of the terms' lack of distinctiveness is the 30(b)(6) testimony of Mr. Goldberg, the director of FLVR, that these terms are generic. In Goldberg's own words, the term "discount mobility" is akin to the term "lawyer"—"it's a generic term." Doc. 33 ("Goldberg Dep") at 27-29. The fact that "discount mobility" is, by FLVR's own admission, widely used, is probative of the descriptive nature of the term. *See Gift of Learning Foundation v. TGC, Inc.*, 329

6

F.3d 792, 798 (11th Cir. 2003) ("The extent to which third parties use a mark is probative evidence of descriptiveness.").

*Finally*, the use of the modifiers "Discount" and "USA" do not elevate the distinctiveness of the mark. The modifier "Discount" indicates that the mobility services are provided at a reduced price, and the modifier "USA" indicates the geographic scope of the mobility services provided. Such modifiers are "not inherently distinctive," but rather are "merely descriptive." *Investacorp*, 931 F.2d at 1522. The Court recognizes that, in some circumstances, "common, ordinary words can be combined in a novel or unique way and thereby achieve a degree of protection denied to the words when used separately." *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979). Here, however, FLVR does not argue that these words have gained special meaning in combination, and no evidence would indicate any such special meaning.

Although not entirely clear, FLVR's argument that these terms are suggestive apparently hinges on the testimony of Mr. Desmarais, the president of Auto Mobility. Specifically, FLVR points to Desmarais' testimony that consumers would not necessarily associate the term "mobility" with mobility vehicles. Doc. 35 ("Desmarais Dep.") at 14-17. As FLVR's web capture reveals, however, FLVR does not offer only mobility vehicles. *See* Doc. 36 at 10. Rather, it offers a plethora of mobility-related products and services, such as scooter rentals, lift rentals, power wheelchair rentals, and oxygen rentals. *See id.* Indeed, the overarching feature or attribute of FLVR's business is that it deals generally in mobility-related products and services.

Therefore, even assuming *arguendo* that the term "discount mobility" is not descriptive specifically of *mobility vehicles*, it nevertheless is descriptive of the products and services

generally offered by FLVR.[2] That is all that is necessary—"[a] mark need not recite each feature of the relevant goods or services in detail to be descriptive, it need only describe a single feature or attribute." *In re Chamber of Commerce of the United States*, 675 F.3d 1297, 1300 (Fed. Cir. 2012) (quotation marks and citation omitted). In other words, because the term "mobility" "naturally directs attention to the . . . effect, or purpose of the product . . . it is descriptive." *Vision Center*, 596 F.2d at 116.

> 2. *FLVR has failed to establish secondary meaning for the descriptive "mobility" marks*

A descriptive mark is entitled to trademark protection only if it has acquired secondary meaning. *See Investacorp*, 931 F.2d at 1522. "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (quotation marks, citation, and alteration omitted). Plaintiffs commonly establish secondary meaning through consumer survey evidence. *See Investacorp*, 931 F.2d at 1525. Absent survey evidence, a court considers "the length and nature of the name's use, the nature and extent of advertising and promotion of the name, the efforts of the proprietor to promote a conscious connection between the name and the business, and the degree of actual recognition by the public that the name designates the proprietor's product or service." *Welding Servs.*, 509 F.3d at 1358. A plaintiff "has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term." *Investacorp*, 931 F.2d at 1526; *see also Gift of Learning Foundation*, 329 F.3d at 800.

---

[2] Notably, Desmarais' testimony is consistent with this interpretation—he testified that he would associate "discount mobility" with scooters, wheelchairs, and/or medical equipment. *See* Desmarais Dep. at 15.

Here, FLVR has failed to set forth evidence that would sustain its burden of demonstrating by "a high degree of proof" that either "Discount Mobility" or "Discount Mobility USA" has acquired secondary meaning. FLVR has set forth no consumer survey evidence. FLVR has set forth no evidence as to the "nature and extent of advertising and promotion of the name." FLVR has set forth no evidence of its efforts "to promote a conscious connection between the name and the business." And FLVR has set forth no evidence as to any "actual recognition by the public that the name designates [its] product or service."

The only evidence of secondary meaning that FLVR offers is that it has used "Discount Mobility" and "Discount Mobility USA" on its website continuously since 2002. Goldberg Decl. ¶¶ 8-10. This assertion, if true, could possibly support a prima facie showing of secondary meaning. *See Welding Servs.*, 509 F.3d at 1358 ("A proprietor can make a prima facie showing of 'secondary meaning' by showing that the name has been used in connection with the proprietor's goods or service continuously and substantially exclusively for five years.") (citing 15 U.S.C. § 1052(f)). Standing alone, however, this fact is insufficient to establish secondary meaning. It does not even meet the standard for establishing a prima facie showing, because there is no evidence that these marks were used "substantially exclusively" since 2002 or, for that matter, for any period of time.

In light of the total absence of any other evidence that would establish secondary meaning, as well as the high degree of proof required to make such a showing, the Court finds that, as a matter of law, these terms have not acquired secondary meaning. *See Investacorp*, 931 F.2d at 1525 ("This requisite high degree of proof must be considered by the court when ruling on a motion of summary judgment."). FLVR, therefore, has no protectable trademark rights to "Discount

Mobility" or "Discount Mobility USA," and Auto Mobility is entitled to summary judgment as to Counts I, II, and III.

   B.  "Medical Travel"

  For reasons similar to those for finding that the "Discount Mobility" marks are not protectable, the "Medical Travel" mark is not entitled to trademark protection. Unlike the "Discount Mobility" marks, however, "Medical Travel" is merely generic. "There are several different approaches to defining 'generic.'" *Welding Servs.*, 509 F.3d at 1358. For example, a generic name could be one that "refers to a particular genus or class of which an individual article or service is but a member." *Id.* (quotation marks and citation omitted). Or, it could be "the term by which the product or service itself is *commonly* known." *Id.* citation omitted). "Still other courts say that a generic name depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of the whole." *Id.* (citation omitted). "Genericness lies not in the term itself, but in the use of the term"—for example, "ivory" is generic of elephant tusks but arbitrary as applied to soap. *Id.* (citation omitted).

  Regardless of how "generic" is specifically defined, "Medical Travel" is generic in reference to the medical tourism industry. To begin with, "Medical Travel" is synonymous with "medical tourism," *see* Doc. 37-17 at 17 (listing "tour" and "touring" as synonyms for "travel"), which is commonly used to describe travel services for people with special medical needs, *see, e.g.*, Doc. 37-17 at 23-24. Further, the term "Medical Travel" has itself been widely adopted and commonly used to describe such travel services. *See, e.g.*, Doc. 37-17 at 25 (excerpt from the "International *Medical Travel* Journal," containing a headline for the "[l]atest news, articles, and research on *medical travel* and *medical tourism*") (emphases added). Following a detailed review of this and other similar evidence, the USPTO found "Medical Travel" to be generic. *See* Doc.

37-17 at 14 ("the applied-for mark appears to be generic in connection with the identified services").

Moreover, MT's own use of the phrase indicates that it is generic. *First*, a capture of MT's website reveals that MT uses the phrase to refer generically to the services that it provides. *See* Doc. 37-17 at 28-29 (describing "Medical Travel, Inc." as "A Global *Medical Services Travel* Directory" and stating that it "giv[es] user help with *Medical Travel* around the World") (emphases added). *Second*, MT implicitly conceded in the Complaint that it is but one company of many that provide generic "medical travel" services. *See* Compl. ¶ 15 ("Medical Travel, Inc. [] is a small, family-owned full service *medical travel* agency . . . .) (emphasis added). *Finally,* Goldberg's 30(b)(6) deposition testimony confirms that MT understood this term to be generic. *See* Goldberg Dep. at 29 ("Q: What about, "medical travel," is it a generic term too? A: That's one of the top six names in the world. It'll attract a couple of billion people, if you use it right."). MT's generic use of the phrase "medical travel" serves as "powerful evidence" that it is in fact generic. *See Welding Servs.*, 509 F.3d at 1359 (finding the putative mark "Welding Services, Inc." to be generic because its would-be proprietor used the words "to refer to the kind of services it and its competitors provide").

It is true that "Medical Travel" is registered in the State of Florida, *see* Doc. 37-18, which serves as "prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in [Florida] on or in connection with the goods or services specified in the certificate," Fla. Stat. § 495.061(2). In other words, MT is afforded "a presumption that the mark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning." *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.*, 828 F. Supp. 925, 932 (M.D. Fla. 1993) (quotation marks and citation omitted).

11

Here, however, this presumption has been overcome by overwhelming proof of genericness. *See Gulf Coast Commercial Corp. v. Gordon River Hotel Association*, 508 F. Supp. 2d 1157, 1164 (M.D. Fla. 2007) ("This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness.") (citation omitted). And at oral argument, counsel for MT stated that it was no longer contesting the mark's validity. *See* Hearing Tr. at 20.

In sum, it is clear that "Medical Travel" is synonymous with medical tourism and that it is commonly used to refer to tourism services for those with medical needs. It is also clear that this term describes those services "as a whole, rather than any particular feature, quality, or characteristic of the whole." "Medical Travel" is therefore generic and not entitled to any trademark protection, and Auto Mobility is entitled to judgment as a matter of law as to Counts IV, V, and VI.

### IV. CONCLUSION

The undisputed evidence before this Court reveals that the asserted marks are not entitled to trademark protection. "Discount Mobility" and "Discount Mobility USA" are descriptive marks for which FLVR has provided insufficient evidence of secondary meaning, and "Medical Travel" is a generic term. The Court therefore need not reach the issues of whether there is sufficient evidence of a likelihood of confusion or whether Plaintiffs have suffered any damages. It is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment (Doc. 32) is **GRANTED**.
2. The Clerk is directed to enter judgment in favor of Defendant Auto Mobility Sales, Inc., and against Plaintiffs Florida Van Rentals, Inc., and Medical Travel, Inc.

3. The Clerk is further directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on January 14, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record